Case No. 26-60344

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

MAHMOUD KHALIL,
*Petitioner*,

v.

TODD WALLACE BLANCHE, *Acting U.S. Attorney General*,
*Respondent*.

_____

## PETITIONER'S OPPOSED MOTION TO TRANSFER PETITION FOR REVIEW TO DISTRICT COURT PURSUANT TO 28 U.S.C. §2347(B)(3)

_____

Marc Van Der Hout
Johnny Sinodis
Oona Cahill
VAN DER HOUT LLP
360 Post St., Suite 800
San Francisco, CA 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal:

Petitioner Mr. Mahmoud Khalil is represented in these proceedings by the following counsel on a *pro bono* basis:

<u>Van Der Hout LLP</u>: Marc Van Der Hout, Johnny Sinodis, and Oona Cahill.[1]

Mr. Khalil's counsel listed herein also represent him in habeas proceedings before the U.S. District Court for the District of New Jersey and the U.S. Court of Appeals for the Third Circuit.

Chief Appellate Immigration Judge ("AIJ") Garry D. Malphrus and AIJs Keith E. Hunsucker and Marcos Gemoets, of the Board of Immigration Appeals ("BIA"), rendered the decision on Petitioner's appeal of the Immigration Judge's ("IJ") decision ordering removal and denying relief. Former Assistant Chief IJ ("ACIJ") Jamee Comans (current Acting Assistant Director of the Office of Policy at the Executive Office for Immigration Review ("EOIR")) rendered the decision in removal proceedings at the Immigration Court.

---

[1] Mr. Van Der Hout, Mr. Sinodis, and Ms. Cahill represented Petitioner in the underlying agency proceedings before the Board of Immigration Appeals and the Immigration Judge.

The following remaining counsel and other entities also have an interest in the outcome of this case:

Department of Homeland Security ("DHS")

Todd Lyons

*Director of U.S. Immigration and Customs Enforcement* ("ICE")

Mellissa B. Harper

*Field Officer Director of the New Orleans Field Office,*

*U.S. Immigration and Customs Enforcement*

Board of Immigration Appeals ("BIA")

Todd Blanche

*Acting U.S. Attorney General*

Drew Ensign

*U.S. Department of Justice, Office of Immigration Litigation*

<u>/s/ Johnny Sinodis</u>
Johnny Sinodis
Attorney for Mr. Khalil

## TABLE OF CONTENTS

RELEVANT FACTUAL AND PROCEDURAL HISTORY ...............................7

I.        The federal government targets Petitioner for removal on the basis of First Amendment-protected activity........................................................7

II.       Petitioner attempts to conduct discovery into his constitutional claims before the immigration court, but is denied the opportunity to do so..9

III.     New evidence substantiates Petitioner's allegations that his constitutional rights were violated and provides a basis for further targeted discovery, but the BIA refuses to have the agency consider it or permit fact-finding. .................................................................12

IV.     The BIA declines to permit discovery or consider constitutional claims ...........................................................................................................14

V.      New evidence emerges that EOIR violated Petitioner's right to a neutral adjudicator and a full and fair hearing.....................................16

ARGUMENT...........................................................................................................17

I.        Petitioner meets §2347(b)(3)'s requirements. ....................................17

        a. Petitioner is entitled to fact-finding on material issues of fact on his colorable constitutional claims. ..............................................19

            i. Petitioner is entitled to fact-finding on the government's unlawful First Amendment retaliation and discrimination against him...............................................................19

            ii. Petitioner is entitled to fact-finding on the constitutionality of the FPG statute, facially and as applied to Petitioner..............23

            iii. Petitioner is entitled to fact-finding on his claim that the agency violated his Fifth Amendment rights by denying him a neutral adjudicator and a full and fair hearing and by violating its own rules designed to protect the rights and interests of noncitizens. ...............................................................25

**II.** **Without a §2347(b)(3) transfer, Petitioner will be denied any opportunity to develop the record to challenge his unconstitutional removal**......................................................................................30

**CONCLUSION**..........................................................................33

**CERTIFICATE OF CONFERENCE** ...................................................... i

**CERTIFICATE OF SERVICE** ........................................................... ii

**CERTIFICATE OF ELECTRONIC FILING**......................................... iii

**CERTIFICATE OF COMPLIANCE WITH RULES 27(d) and 32(a)** ............ iv

**Page(s)**

**Cases**

*American Association of University Professors v. Rubio ("AAUP"),*
  802 F.Supp.3d 120 (D. Mass. 2025) ......................................................... 12, 13, 22

*Accardi v. Shaughnessy,*
  347 U.S. 260 (1954) ............................................................................... 17, 25, 26

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) .................................................................................. 19

*Arzanipour v. I.N.S.,*
  866 F.2d 743 (5th Cir. 1989) .................................................................... 25, 30

*Bailey v. KS Mgmt. Servs., L.L.C.,*
  35 F.4th 397 (5th Cir. 2022) ..................................................................... 22

*Bell v. Hood,*
  327 U.S. 678 (1946) .................................................................................. 19

*Bello-Reyes v. Gaynor,*
  985 F.3d 696 (9th Cir. 2021) .................................................................... 19

*Bridges v. Wixon,*
  326 U.S. 135 (1945) .................................................................................. 19

*Chiles v. Salazar,*
  146 S. Ct. 1010 (2026) .............................................................................. 23

*Citizens United v. FEC,*

558 U.S. 310 (2010) ................................................................................ 23

*City of Lakewood v. Plain Dealer Publ'g Co.,*

486 U.S. 750 (1988) ................................................................................ 23

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust,*

508 U.S. 602 (1993) ................................................................................ 25

*Coriolan v. INS,*

559 F.2d 993 (5th Cir. 1977) .................................................................. 32

*Falek v. Gonzales,*

475 F.3d 285 (5th Cir. 2007) ............................................................. 2, 18

*Gallo-Alvarez v. Ashcroft,*

266 F.3d 1123 (9th Cir. 2001) ................................................................ 32

*Gomez-Chavez v. Perryman,*

308 F.3d 796 (7th Cir. 2003) .................................................................. 32

*Gutierrez-Soto v. Sessions,*

317 F. Supp. 3d 917 (W.D. Tex. 2018) ................................................... 19

*Harris v. Nelson,*

394 U.S. 286 (1969) ................................................................................ 31

*Iancu v. Brunetti,*

588 U.S. 388 (2019) ................................................................................ 23

*INS v. St. Cyr,*

533 U.S. 289 (2001) .................................................................. 5, 30

*Keenan v. Tejeda,*

290 F.3d 252 (5th Cir. 2002) ............................................................ 20

*Khalil v. Joyce,*

780 F. Supp. 3d 476 (D.N.J. 2025) ...................................................... 18

*Khalil v. Joyce,*

784 F. Supp. 3d 705 (D.N.J. 2025) ...................................................... 24

*Khalil v. President, United States,*

164 F.4th 259 (3d Cir. 2026) ...................................................... Passim

*Lozman v. Riviera Beach,*

585 U.S. 87 (2018) ..................................................................... 22

*Matal v. Tam,*

582 U.S. 218 (2017) ................................................................. 19, 20

*Morgan v. Gonzales,*

495 F.3d 1084 (9th Cir. 2007) .......................................................... 32

*Mount Healthy City School District Board of Education v. Doyle,*

429 U.S. 274 (1977) ................................................................... 20

*Musau v. Carlson,*

499 F. App'x 837 (10th Cir. 2012) ..................................................... 32

*NRA v. Vullo*,

602 U.S. 175 (2024) ............................................................................ 20

*Perales v. Casillas*,

903 F.2d 1043 (5th Cir. 1990) ...................................................... 19, 21

*Ragbir v. Homan*,

923 F.3d 53 (2d Cir. 2019) ................................................................. 19

*Reed v. Town of Gilbert*,

576 U.S. 155 (2015) ............................................................................ 23

*Reno v. Arab-American Anti-Discrimination Committee ("AADC")*,

525 U.S. 471 (1999) ......................................................... 4, 5, 22, 30

*Richardson v. Reno*,

162 F.3d 1338 (11th Cir. 1998) ......................................................... 32

*Rosenberger v. Rector & Visitors of Univ. of Va.*,

515 U.S. 819 (1995) ............................................................................ 19

*Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Eng'rs*,

849 F. App'x 459 (5th Cir. 2021) ........................................................ 6

*Snyder v. Phelps*,

562 U.S. 443 (2011) ............................................................................ 20

*United States v. Playboy Entm't Grp.*,

529 U.S. 803 (2000) ............................................................................ 23

*Wang v. Holder*,

569 F.3d 531 (5th Cir. 2009)............................................................................. 25

*Wang v. Reno*,

81 F.3d 808 (9th Cir. 1996)............................................................................. 28

*Webster v. Doe*,

486 U.S. 592 (1988) ............................................................................. 30

Petitioner, Mr. Mahmoud KHALIL, hereby moves to transfer proceedings to the U.S. District Court for the Eastern District of New York, where he resides, to conduct fact-finding pursuant to the Hobbs Act, 28 U.S.C. §2347(b)(3) ("Hobbs Act transfer").

Mr. Khalil is a lawful permanent resident ("LPR") of the United States whom the government has targeted for deportation because of his constitutionally protected speech and association, in violation of his due process rights. As explained below, he challenges the validity of his removal order on several constitutional grounds based on the facts and circumstances of his case. However, the BIA held that the agency has no power to adjudicate his constitutional claims or conduct the necessary factual discovery. Record on Appeal ("ROA") 1810-11. Nor has Petitioner been able to secure a forum for these claims through habeas review. *See Khalil v. President, United States*, 164 F.4th 259, 274-81 (3d Cir. 2026). According to the Third Circuit and the BIA, only this Court can ensure Petitioner's claims receive the proper factual development and review. *Khalil*, 164 F.4th at 280 (holding Petitioner may seek a Hobbs Act transfer from the Fifth Circuit); ROA.1810-11 (stating Petitioner may press his constitutional claims and seek "any additional factual development" through his petition for review ("PFR")). Petitioner therefore requests a Hobbs Act transfer to have the opportunity to conduct necessary fact-finding so that his constitutional claims can be fully and fairly adjudicated.

Petitioner clearly meets the requirements for a transfer under §2347(b)(3). Neither the IJ nor the BIA has held a hearing on the issues presented here; they ruled they were not required by law to do so and lacked jurisdiction to consider Petitioner's constitutional claims. ROA.1810-1811; *Falek v. Gonzales*, 475 F.3d 285, 291 n.4 (5th Cir. 2007) ("there is no dispute that the BIA has no power to adjudicate constitutional claims").

Further, Petitioner presents colorable—indeed, strong—constitutional claims that the government has violated his First and Fifth Amendment rights in the initiation and prosecution of his removal proceedings.[2] Several of these claims require factual development:

(1) Whether the government violated the First Amendment by charging and ordering Petitioner removed in retaliation for his engaging in First Amendment-protected speech, association, assembly, and petitioning within the United States. This includes the following inquiries:

  (a) Whether Secretary of State Rubio issued the putative determination (the "Rubio Determination") regarding

---

[2] Petitioner raises numerous other legal and constitutional challenges in this PFR, which will be addressed in his Opening Brief, following the necessary discovery on the claims presented here. Purely legal claims, and claims confined to the record developed before the agency, are therefore not addressed here.

Petitioner's removability, and the government charged and ordered Petitioner removed under 8 U.S.C. §1227(a)(4)(C)(i) (the "foreign policy ground" or "FPG"), a statute never previously used to seek the deportation of a noncitizen on the basis of engaging in First Amendment-protected speech, association, and assembly within the United States, in retaliation for that protected activity;

(b) Whether the government added a charge and ordered Petitioner removed under 8 U.S.C. §1227(a)(1)(A), §1182(a)(6)(C)(i) (the "post-hoc charge") in retaliation for Petitioner's First Amendment-protected activity within the United States, including his speech, association, assembly, and the exercise of his right to petition the government via filing a federal lawsuit;

(c) Whether the government sought and secured a removal order against Petitioner under both charges pursuant to a government policy to retaliate against noncitizens and to suppress constitutionally protected speech, association, and assembly, including on the basis of viewpoint and speaker; and

3

(d) Whether the removal charges and removal order against Petitioner are the result of "outrageous" discrimination, motivated to suppress the expression of constitutionally-protected speech, association, assembly, and petitioning within the United States, *see Reno v. Arab-American Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 491 (1999).

(2) Whether 8 U.S.C. §1227(a)(4)(C)(i), on its face *and* as applied to Petitioner through the Rubio Determination, violates the First and Fifth Amendments. This includes the following inquiries:

(a) Whether 8 U.S.C. §1227(a)(4)(C)(i)-(ii) violates the First Amendment facially and as applied to Petitioner because it unjustifiably seeks to regulate, punish, and censor constitutionally protected speech, association, and assembly within the United States, including on the basis of content, viewpoint, and speaker; and

(b) Whether 8 U.S.C. §1227(a)(4)(C)(i), as applied to Petitioner through the Rubio Determination, violates the Fifth Amendment because it is unconstitutionally vague.

(3) Whether the government violated the Fifth Amendment by failing to

4

provide Petitioner with a neutral adjudicator and a full and fair hearing, and by violating agency rules designed to protect noncitizens' fundamental rights and interests.

The Constitution requires that Petitioner be afforded *some* forum to raise his colorable constitutional claims on a fully developed record. *See INS v. St. Cyr*, 533 U.S. 289, 314 (2001); *AADC*, 525 U.S. at 495 (Ginsburg, J. concurring). Transfer under §2347(b)(3) provides a forum to develop the administrative record through fact-finding on Petitioner's constitutional claims, which the agency categorically denied. ROA.1782-1817 (BIA declining to permit discovery or consider Petitioner's constitutional challenges). Based in part on the recognition that Petitioner could not develop an adequate record before the agency, the Third Circuit held that §2347(b)(3) would be applicable here, and the availability of such a transfer was highly relevant to its determination that there was no habeas jurisdiction to hear Petitioner's constitutional claims. *Khalil*, 164 F.4th at 280.

Respondent opposes this motion – despite the government's concession to the Third Circuit that "it would not object to a district-court remand if Petitioner sought one from the PFR court." *Id.* Respondent argues that this motion is premature because it asserts that there are multiple grounds on which the Court could rule for the government that do not require further factfinding. But Petitioner must be

allowed an adequate forum to raise *all* of his claims—the Court cannot rule for Respondent while denying Petitioner that forum. Transfer to the District Court pursuant to §2347(b)(3) must be granted given the particular facts and circumstances of this matter.[3]

If Petitioner's motion is granted, he also requests that briefing on his PFR be stayed or held in abeyance pending the conclusion of proceedings pursuant to the Hobbs Act transfer. *See, e.g., Texas v. U.S. Dep't of Homeland Security*, Case No. 23-50869, Dkt. 117-1 (5th Cir. Jan. 22, 2024) (holding appeal in abeyance to permit further factual development before district court); *Shrimpers & Fishermen of the RGV v. U.S. Army Corps of Eng'rs*, 849 F. App'x 459, 461–63 (5th Cir. 2021) (holding petition in abeyance to permit further factual development). As described below, Petitioner raises numerous constitutional challenges to the validity of his removal order that cannot be properly adjudicated without the development of a factual record. It would therefore be inappropriate and prejudicial to Petitioner to consider arguments regarding his claims when they will turn on a factual record that is yet to be developed.

---

[3] While Respondent has stated that this Court could address the need for any factual development after briefing is complete on the PFR, this puts Petitioner and the Court in the untenable position of reviewing the removal order on an incomplete record, only to be cured by subsequent factual development and additional briefing. Instead, the Court should hold the PFR in abeyance until ruling on the present motion, grant Petitioner's transfer motion, and stay or hold briefing on his PFR in abeyance pending factual development.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

**I.      The federal government targets Petitioner for removal on the basis of First Amendment-protected activity.**

Petitioner is a thirty-one-year-old Palestinian born in Syria, where he is ineligible for citizenship. Petitioner holds Algerian citizenship but has never lived there. He is married to a U.S. citizen with whom he shares a one-year-old U.S. citizen son. ROA.6215-18. In 2024, Petitioner obtained LPR status through his marriage. ROA.6214. Due to his public support of Palestine and Palestinians while a graduate student at Columbia University, *see, e.g.*, ROA.9531, Petitioner suffered numerous derogatory campaigns by nongovernmental organizations that publicly called on government officials to deport Petitioner. ROA.8484-91.

On March 8, 2025, DHS arrested Petitioner without a warrant where he lived in New York and issued him a Notice to Appear ("NTA") early the next morning, March 9. The NTA asserted Petitioner is subject to removal under the FPG in that "the Secretary of State has reasonable ground to believe that your presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." ROA.9879-81. Early in the morning of March 9, without changing the information on the detainee locator, DHS transferred Petitioner to a detention facility in New Jersey, denied him the right to call his lawyer or family, and then transferred him yet again to the LaSalle Detention Facility in Jena, Louisiana. ROA.2142-45. While Petitioner was in New Jersey, his lawyers

filed a habeas petition seeking his release, which he later amended to challenge, *inter alia*, the government's invocation of the FPG and, later, the post-hoc alleged misrepresentation charge. *Khalil v. Joyce*, No. 2:25-cv-01963-MEF (D.N.J.); ROA.2120-73.

After Petitioner was arrested, President Trump issued a statement applauding the arrest, warning that it was "the first of many to come," and promising to "find, apprehend, and deport" other students engaged in pro-Palestinian campus protests, which President Trump described as "pro-terrorist, anti-Semitic, anti-American activity." ROA.2146. On March 17, the same day Petitioner filed a motion for preliminary injunction in his habeas case, DHS issued a Form I-261, Additional Charges of Inadmissibility/Deportability, which asserted an additional, post-hoc charge under 8 U.S.C. §1227(a)(1)(A), alleging he had failed to disclose certain information on his permanent residency application,[4] ROA.9826-27, despite DHS's determination only ten days earlier that it did "not identif[y] any alternative grounds of removability [other than the FPG charge] that would be applicable to [Khalil]." ROA.4304. The Form I-261 also stated that "the Secretary of State has determined

---

[4] DHS alleged, *inter alia*, that Petitioner failed to disclose: "that you were a member of the United Nations Relief and Works Agency for Palestine Refugees (UNRWA) from June through November 2023, as a political affairs officer." Petitioner subsequently amended his federal lawsuit, challenging these allegations as First Amendment retaliation. The other allegations underlying this charge are not part of the BIA decision and are therefore not on appeal.

that your activities and presence in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest," newly admitting that the government seeks to deport Petitioner for his "beliefs, statements or associations" that are constitutionally protected under the First Amendment. *See* ROA.9826-27; 8 U.S.C. §§1227(a)(4)(C)(ii); 1182(a)(3)(C)(iii).

## II. Petitioner attempts to conduct discovery into his constitutional claims before the immigration court, but is denied the opportunity to do so.

Petitioner's immigration hearings proceeded with highly unusual speed. On April 8, during the first substantive hearing in Petitioner's removal proceedings, the IJ scheduled a contested removability hearing for three days later. The IJ told Petitioner's counsel they were in the "wrong court" to conduct discovery and refused to consider Petitioner's constitutional challenges to his removal on both charges. ROA.5190 (IJ: "The authority that I have from the Attorney General is very limited to two things, is Mr. Khalil removable from the United States and does he have relief available to him from removal if he is found removable? That's it. Anything else, you need to go to the 5th Circuit or you need to file it outside[.]").

On April 11, the IJ denied Petitioner's request for time to present evidence and argument, orally sustained the FPG charge based solely on the Rubio Determination, and held in abeyance the §1227(a)(1)(A) charge. ROA.5199-269. The IJ also denied Petitioner's efforts to obtain documents relevant to the

government's decisions to, *inter alia*, issue the Rubio Determination, charge him under the FPG, and later allege removability under §1227(a)(1)(A), holding simply "Court lacks authority. See Matter of Ruiz-Massieu, 22 I&N Dec. 833, (BIA 1999)." ROA.9642. The IJ also denied without analysis Petitioner's motion to subpoena Secretary Rubio. ROA.9628.

Petitioner subsequently applied for asylum, Withholding of Removal, and protection under the Convention Against Torture ("CAT"). ROA.9262-502; ROA.8454-9233. At an Individual Calendar Hearing ("ICH") on May 22, the IJ heard testimony and evidence limited to Petitioner's asylum claim and the §1227(a)(1)(A) charge, but because the IJ had already held she had no jurisdiction to consider constitutional claims and no discovery would be permitted before the agency, the hearing did not address Petitioner's constitutional claims. ROA.5291 (IJ: "I'm not taking arguments on anything other than the respondent's application for relief from removal that he filed before this court.").

On June 11, Judge Farbiarz of the U.S. District Court for the District of New Jersey held that the FPG, as applied to Petitioner through the Rubio Determination, is unconstitutionally vague and enjoined the government from "seeking to remove [Petitioner] from the United States based on the Secretary of State's determination[.]" ROA.9841.

Nonetheless, nine days later, the IJ issued a decision on June 20, the same day

Petitioner was released on bail by Judge Farbiarz, ignoring the District Court's injunction and sustaining *both* charges of removal, denying his asylum application, refusing to consider his request for a §1227(a)(1)(H) waiver on the second charge for which he qualified, and ordering Petitioner removed to Algeria, or, alternatively, to Syria. ROA.6894.

On July 18, pursuant to an order by the District Court making clear that the IJ was barred from considering the FPG, the IJ reopened proceedings, ROA.6750, and subsequently vacated her finding of removability on the FPG. ROA.6667. However, she then denied Petitioner an evidentiary hearing again (which would have required the case to be transferred to New York, where Petitioner resides, under standard practice, ROA.6680-84) and ordered him removed on the basis of the §1227(a)(1)(A) charge on September 12. ROA.5143; ROA.5149. Petitioner appealed the IJ's decision to the BIA. ROA.5082.

On January 15, 2026, the Third Circuit issued a split panel decision sustaining on jurisdictional grounds the government's appeal of Judge Farbiarz's decision. *Khalil*, 164 F.4th 259. Based in part on the recognition that Petitioner could not develop an adequate record before the agency, the Third Circuit stated that Petitioner "should be able to invoke §2347(b)(3)" before this Court and that "the government conceded it would not object to a district-court remand if Khalil sought one from the PFR court," making clear that the availability of such a transfer was highly relevant

to its determination that it lacked habeas jurisdiction to adjudicate Petitioner's constitutional claims. *Khalil*, 164 F.4th at 280.

**III. New evidence substantiates Petitioner's allegations that his constitutional rights were violated and provides a basis for further targeted discovery, but the BIA refuses to have the agency consider it or permit fact-finding.**

On January 22, 2026, the court in *American Association of University Professors v. Rubio ("AAUP")*, Case No. 1:25-cv-10685-WGY (D.Mass. 2025), released several documents produced in discovery during a bench trial, many of which are relevant to Petitioner. Assessing these documents and Petitioner's case, the court found, by clear and convincing evidence, that the government enacted an unlawful policy of targeting pro-Palestinian noncitizen student activists, including Petitioner, with the goal of chilling such protected expression, specifically to "terroriz[e] similarly situated non-citizen (and other) pro-Palestinians into silence." *AAUP*, 802 F.Supp.3d 120, 173 (D.Mass. 2025). The court also found that the government's policy of targeting noncitizens for their First Amendment-protected activity was arbitrary and capricious because it represented an abrupt and unexplained reversal from DHS's existing enforcement guidelines without accounting for the "serious reliance interests" engendered by those guidelines. *Id*. at 192-93. The guidance was set forth in the still-operative Memorandum from Secretary of Homeland Security Mayorkas entitled, "Guidelines for the Enforcement of Civil Immigration Law" (Sept. 30, 2021), www.ice.gov/doclib/news/guidelines-

12

civilimmigrationlaw.pdf ("2021 Mayorkas Memo"), which instructs that a "noncitizen's exercise of their First Amendment rights ... should never be a factor in deciding to take enforcement action."

The documents released in January included some, but certainly not all, of the evidence Petitioner sought in his discovery requests before the IJ.

On February 13, 2026, Petitioner filed a Motion to Remand with the BIA, seeking to introduce this new evidence of First Amendment retaliation and to present the constitutional challenges that the IJ refused to entertain, in a holding seemingly contrary to intervening EOIR guidance suggesting the agency should consider constitutional claims. ROA.4981; ROA.4795-99.

As explained in Petitioner's Motion to Remand, *id.*, the documents released through *AAUP* reveal that DHS targeted Petitioner because of his First Amendment-protected activity, and pursuant to a government policy of retaliating against and punishing noncitizens for their First Amendment-protected expression advocating for Palestinian human rights, or criticizing Israel, or U.S. support for Israel. In addition, these documents demonstrate the pretextual nature of the post-hoc charge, showing that DHS's investigation into Petitioner did "not identif[y] any alternative grounds of removability [other than the FPG charge] that would be applicable to [Khalil]." ROA.4304. This statement is particularly significant because DHS's "investigation" into Petitioner included a review of (1) his Form I-485, and (2) the

information that DHS later proffered as support for the allegations underlying the §1227(a)(1)(A) charge. <u>ROA.4269-73</u>.

The tranche of evidence released through *AAUP* as it relates to Petitioner and the policy strongly substantiated Petitioner's constitutional claims, but it does not contain, for example, other highly relevant records specific to enforcement actions taken against Petitioner including communications regarding the government's addition of the post-hoc charge and invocation of the "compelling U.S. foreign policy interest" exception in his Form I-261. Petitioner therefore sought remand to the IJ, both to present this evidence which had previously been withheld from him for the first time (since the BIA cannot engage in fact-finding) and to pursue additional necessary fact-finding on his constitutional claims. <u>ROA.4981</u>.

## IV. The BIA declines to permit discovery or consider constitutional claims.

On April 9, in the decision at issue in Petitioner's PFR, the BIA dismissed Petitioner's appeal and denied his Motion to Remand. <u>ROA.1928</u>. The BIA upheld the FPG charge based solely on the Rubio Determination despite being enjoined from doing so. The BIA failed to recognize that the FPG was not on appeal, despite the IJ vacating the charge below and government counsel representing to the Third

Circuit that the charge was not part of the removal order on appeal.[5] In its decision, the BIA erroneously concluded that the District Court's injunction was no longer in effect, and ignored Petitioner's motions to file supplemental briefs regarding the FPG in the event that the BIA decided to utilize the FPG to pursue Petitioner's removal despite the federal court order preventing that action. ROA.1929-32.[6] The BIA also upheld the charge under §1227(a)(1)(A), solely on the basis that Petitioner allegedly failed to disclose that he was "involved and associated" with UNRWA (even though DHS *did not* present this allegation in its NTA). ROA.1932-33. The BIA further refused to consider Petitioner's constitutional claims and affirmed the IJ's denial of discovery. ROA.1933-34. It also acknowledged the findings of *AAUP* but refused to consider record evidence of First Amendment retaliation or to remand to the IJ to allow presentation of evidence of the government's unconstitutional actions and discovery for the first time, stating that Petitioner could pursue all of his constitutional claims and develop the factual record through his PFR. *Id*.

On April 15, Petitioner submitted a Motion to Reconsider with the BIA, explaining that the District Court injunction was still in effect and the BIA erred in

---

[5] *Khalil v. Trump*, Case No. 25-2162, Dkt. 125 (3d Cir. Oct. 22, 2025) (Transcript of Oral Argument) at 59:4-10; ROA.6667 (IJ Vacatur Order); ROA.5150-51 (IJ Order of September 12, incorporating Vacatur Order in full).
[6] On May 26, 2026, the Third Circuit granted a stay of the mandate pending Petitioner seeking Supreme Court review, so the District Court injunction remains in effect today. ROA.16.

ordering removal on the FPG. ROA.1828. Despite the remarkable speed with which the BIA issued its decision on the merits in Petitioner's case—nine days after the completion of briefing—and the clear error the BIA made in ruling the District Court's injunction was no longer in effect, Petitioner's Motion to Reconsider remains unadjudicated more than three months after filing. *Id.*; *Khalil v. Joyce*, Case No. 2:25-cv-01963, Dkt. 427.

## V. New evidence emerges that EOIR violated Petitioner's right to a neutral adjudicator and a full and fair hearing.

On May 18, Petitioner filed a Motion to Reopen with the BIA based on newly revealed information indicating that he was deprived of his right to a full and fair hearing before a neutral adjudicator, including: (1) Petitioner's proceedings were expedited and labeled high-profile from the outset; (2) at least three members of the BIA recused themselves from Petitioner's case; (3) the agency improperly treated his case as detained, despite him never being detained during his appeal; and (4) the agency routed his case specifically to Chief AIJ Malphrus. ROA.25. Former long-time EOIR employees attest that the highly unusual treatment of Petitioner's case and abnormal recusals strongly suggest that current BIA members had improper and unlawful involvement in the underlying IJ decisions, in violation of the IJ's regulatory duty to adjudicate cases independently, their own regulatory and ethical

obligations, and Petitioner's due process rights. [7] ROA.687-733. [8] Petitioner's

Motion to Reopen remains pending.

**ARGUMENT**

## I. Petitioner meets §2347(b)(3)'s requirements.

Section 2347(b)(3) establishes three requirements for transfer to a District Court for additional fact-finding: (1) the agency "has not held a hearing" on the claims at issue; (2) "a hearing is not required by law"; and (3) there exists a "genuine issue of material fact."

Here, the requirements are clearly met. First, no hearing on Petitioner's constitutional claims was held before the agency because the IJ, and subsequently the BIA, refused to consider them and denied any record development on those claims. ROA.1933-34; ROA.5190; ROA.9628; ROA.9642. As the Third Circuit recognized:

> [T]he immigration judge refused to allow discovery into how the Secretary of State decided to make him removable on the foreign-policy charge. That may have prevented him from proving a causal link to

---

[7] *See* ROA.19-23; Jonah E. Bromwich & Nicholas Nehamas, *Mahmoud Khalil Hurtles Toward Potential Deportation as U.S. Speeds Case*, New York Times (May 8, 2026), https://www.nytimes.com/2026/05/08/nyregion/mahmoud-khalil-deportation-case.html?smid=nytcore-ios-share [https://perma.cc/GX3S-9MWS]; *Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954) ("the Board must . . . exercise its own independent discretion, after a fair hearing, which is nothing more than what the regulations accord petitioner as a right.").

[8] Petitioner also filed a Freedom of Information Act ("FOIA") request seeking further information about this undue influence. ROA.735. To date, the government has refused to produce any information or documents in response.

retaliation or discriminatory enforcement, which could show that the alleged policy is unconstitutionally vague. And the structure of the immigration-court system is ill-suited to developing pattern-and-practice challenges. . . . Khalil did not get a hearing before the government issued the Rubio determination, detained him, or charged him as removable for visa fraud. Nor is there any evidence that the government held a hearing before adopting the alleged policy that he challenges. So he should be able to invoke § 2347(b)(3).

*Khalil*, 164 F.4th at 280.

Second, the agency held that it was not required by law to hold a hearing on Petitioner's constitutional claims, concluding it lacks jurisdiction to consider those claims and stating, "[a]liens in removal proceedings are not entitled to conduct discovery directed toward the records, officers, agents, or employees of DHS, the Department of Justice, or the Department of State." ROA.5190; ROA.1810-11; *Falek*, 475 F.3d at 291 n.4 (BIA has no power to adjudicate constitutional claims); *Khalil v. Joyce*, 780 F.Supp.3d 476, 516 (D.N.J. 2025), *vacated and remanded on jurisdictional grounds sub nom. Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026) ("immigration courts could not meaningfully develop this case, legally or factually"); *id.* at 520 (acknowledging IJ's denial of Petitioner's discovery-related motions); *Khalil*, 164 F.4th at 280 (Petitioner did not receive a hearing on the relevant claims).

As to the third requirement, Petitioner presents colorable constitutional claims and genuine issues of material fact, substantiated by the (limited) existing record regarding those claims. To be colorable, a claim only need not be "immaterial and

18

made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682–683 (1946)). Petitioner's claims are clearly colorable.

### a. Petitioner is entitled to fact-finding on material issues of fact on his colorable constitutional claims.

#### i. Petitioner is entitled to fact-finding on the government's unlawful First Amendment retaliation and discrimination against him.

The First Amendment prohibits the government from retaliating and discriminating against individuals—including noncitizens—for their protected speech, association, assembly, and petitioning. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("freedom of speech ... is accorded aliens residing in this country"); *Ragbir v. Homan*, 923 F.3d 53, 71–72 (2d Cir. 2019), *vac'd on other grounds sub nom. Pham v. Ragbir*, No. 19-1046, 2020 WL 5882107 (U.S. Oct. 5, 2020); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021); *Perales v. Casillas*, 903 F.2d 1043, 1053 (5th Cir. 1990); *Gutierrez-Soto v. Sessions*, 317 F.Supp.3d 917, 921 (W.D. Tex. 2018). "It is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–30 (1995)). "Such discrimination based on viewpoint is an egregious form of content discrimination, which is presumptively unconstitutional." *Id.*

19

(cleaned up); *see also NRA v. Vullo*, 602 U.S. 175, 196 (2024) ("although Vullo can pursue violations of state insurance law, she cannot do so in order to punish or suppress the NRA's protected expression"). Moreover, speech on matters of "public concern is at the heart of the First Amendment[]" and is entitled to "special protection." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (citation omitted).

In order to meaningfully present his claims, Petitioner must be afforded the right and opportunity to conduct discovery into the government's decision-making process and establish a factual record of their retaliatory motives and actions. First Amendment retaliation claims are analyzed under the two-step framework announced in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). Petitioner must first make out a prima facie case that: "(1) [he engaged in] constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Petitioner is entitled to discovery regarding whether each of the government's adverse actions, including the Rubio Determination, the FPG charge, and the post-hoc charge, were substantially motivated by Petitioner's protected expression. Petitioner would also

create a further factual record regarding the ongoing chilling effect caused by each of these adverse actions on his protected speech, as well as that of third parties.

Because the agency denied Petitioner discovery and held it had no power to adjudicate his claims, Petitioner had no opportunity to obtain relevant documentation or elicit testimony regarding how and why the Secretary of State issued the Rubio Determination, the government's basis for pursuing the FPG charge, or why—nine days after concluding the FPG was the only basis of removability—the government added a second, post-hoc charge after Petitioner filed a federal lawsuit challenging his detention and removal under the FPG.

This Court has recognized that "[w]hether a deportation is retaliatory depends upon the peculiar facts of the individual case." *Perales*, 903 F.2d at 1053. The available evidence—third parties' collected media posts and doxxing websites discussing Petitioner's involvement in campus protests, which the government then compiled into a dossier about Petitioner prior to issuing the Rubio Determination, NTA (charging him under the FPG), and then, after he filed a lawsuit, supplemental post-hoc charge—demonstrates that his claims are strong and colorable. ROA.2119-73; ROA.4247; ROA.4269-73; ROA.4302-06; ROA.4981-5006. But a First Amendment retaliation case requires discovery into the full array of government records relevant to Petitioner, including communications, memoranda, letters, investigatory reports, and other documents that would demonstrate the throughline

from the government's retaliatory motivations and each of the adverse actions leading to the removal order in this case. Without such discovery, Petitioner will be prevented from meaningfully presenting his retaliation claim. *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 403 (5th Cir. 2022) (abuse of discretion to deny plaintiff opportunity to conduct discovery on retaliation claim, then fault her for having no evidence of a causal connection between her protected activity and the adverse actions).

Petitioner is also entitled to discovery regarding whether he was targeted pursuant to a government policy designed to punish, suppress, and chill noncitizens who advocate for Palestinian human rights, and whether the removal order against Petitioner is the result of "outrageous" viewpoint discrimination. *See Lozman v. Riviera Beach*, 585 U.S. 87 (2018); *AADC*, 525 U.S. at 491. Petitioner alleges that the government targeted him because of his protected expression and weaponized the immigration enforcement system to become a tool of censorship pursuant to an official government policy that disfavors his viewpoint. A federal district court has already found that the government has adopted an official government policy of targeting people expressing pro-Palestinian views. *See AAUP*, 802 F.Supp.3d at 189. While several of these records refer to Petitioner and substantiate his retaliation claims, *see, e.g.*, ROA.4247, 4269-72, 4302-06, Petitioner was not party to the lawsuit and has never been afforded the opportunity to seek discovery on the

application of this policy to each of the government's adverse decisions in his case, as well as evidence of a pattern of antagonism and coordinated retaliation and outrageous discrimination.

### ii. Petitioner is entitled to fact-finding on the constitutionality of the FPG statute, facially and as applied to Petitioner.

Petitioner also raises a colorable claim that the FPG statute is unconstitutional, facially and as applied to Petitioner through the Rubio Determination, on First and Fifth Amendment grounds.

First, the FPG violates the First Amendment, both on its face and as applied to Petitioner. The FPG imposes a content and viewpoint based restriction on speech contrary to American foreign policy interests, *see, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), *Iancu v. Brunetti*, 588 U.S. 388, 395 (2019), confers unbridled discretion on the Secretary of State to punish the expression of disfavored views, *see City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 763 (1988), and selectively restricts the expression of noncitizen speakers, *see Citizens United v. FEC*, 558 U.S. 310, 341 (2010). The FPG's application to Petitioner here is viewpoint discriminatory because it punishes him for his protected speech and assembly in support of Palestinian rights. *See Chiles v. Salazar*, 146 S. Ct. 1010, 1024 (2026). Petitioner is entitled to discovery on these First Amendment issues, including on the government's justification for restricting his protected expression. *See United States v. Playboy Entm't Grp.*, 529 U.S. 803, 822-24 (2000). Finally, the

23

FPG statute as applied to Petitioner, through the Rubio Determination, also violates the Fifth Amendment because it is unconstitutionally vague. Not only is this claim colorable, but the sole federal court to have considered the issue on the merits already determined that the FPG, as applied to Petitioner through the Rubio Determination, is unconstitutionally vague, after engaging in both fact-finding and legal analysis. *Khalil v. Joyce*, 784 F.Supp.3d 705, 767 (D.N.J. 2025), *vacated and remanded on jurisdictional grounds sub nom. Khalil*, 164 F.4th 259 (observing Supreme Court vagueness law applicable to criminal proceedings also applies to removal cases and finding "Petitioner is likely to succeed on the merits of his claim that Section 1227, as applied to him here through the Secretary of State's determination, is vague in violation of the Due Process Clause of the Constitution").

Petitioner has, to date, had no opportunity to engage in fact-finding before the agency on how the government has historically issued determinations underlying charges of removal pursuant to the FPG. This fact-finding was critical to the habeas court's conclusion that the Rubio Determination was unconstitutionally vague, *see Khalil*, 784 F.Supp.3d at 747-50, and Petitioner is entitled to build a similar record here. Petitioner is also entitled to factfinding on whether Secretary Rubio had a "reasonable ground" to believe that Petitioner's presence would "compromise a compelling United States foreign policy interest," as required under the FPG. *See* 8 U.S.C. §§1227(a)(4)(C), 1182(a)(3)(C).

24

**iii. Petitioner is entitled to fact-finding on his claim that the agency violated his Fifth Amendment rights by denying him a neutral adjudicator and a full and fair hearing and by violating its own rules designed to protect the rights and interests of noncitizens.**

Third, Petitioner alleges that the agency deprived him of his Fifth Amendment rights and violated rules designed to protect noncitizens' fundamental rights. Due process and the agency's own rules provide noncitizens with the right to a neutral and impartial adjudication of his removal proceedings. *See, e.g.*, 8 C.F.R. §1003.10(b) (imposing mandatory duty on IJs to decide cases independently); 8 U.S.C. §§1229a(b)(4), 1229a(c)(1)(A); *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 617 (1993) ("due process requires a 'neutral and detached judge in the first instance.'"); *Wang v. Holder*, 569 F.3d 531, 540 (5th Cir. 2009) ("a due process violation can be premised upon the absence of a neutral arbiter"). The failure of an agency to follow its own rules is a per se denial of due process where, as here, the rule is required by the constitution or a statute. *Arzanipour v. I.N.S.*, 866 F.2d 743, 746 (5th Cir. 1989).

Here, the agency predetermined Petitioner's removability and failed to provide him with a neutral and impartial hearing. In *Accardi v. Shaughnessy*, the Supreme Court held that a noncitizen alleging that he was denied a neutral and impartial hearing was entitled to fact-finding, because "the Board must . . . exercise its own independent discretion, after a fair hearing, which is nothing more than what

25

the regulations accord petitioner as a right." 347 U.S. 260, 267-68 (1954). The petitioner in *Accardi* challenged the validity of the BIA's decision, alleging that, before the BIA ruled on his application for relief, the Attorney General circulated to BIA members a list of "unsavory characters" he intended to deport, including the petitioner, thereby making it "impossible for him to secure fair consideration" of his case. *Id.* at 268. The petitioner alleged that the BIA denied his application without engaging in the neutral and impartial adjudication to which he was entitled. *Id.* The Supreme Court held the petitioner was entitled to a hearing before the District Court to prove his allegations. *Id.*

The same is true here, where Petitioner has provided a colorable claim that he has been deprived of a fair hearing before a neutral adjudicator. The public record— including statements from the President of the United States and other high-level officials denigrating Petitioner prior to and at the start of his removal proceedings, *see, e.g.*, ROA.2146-49; ROA.2306-11, and numerous irregularities in how the IJ and BIA adjudicated Petitioner's removal proceedings, ROA.2187-244— demonstrates that genuine issues of material fact exist as to whether the agency improperly prejudged his case.

Moreover, since the BIA issued its decision, additional evidence has come to light that (1) several current members of the BIA, and potentially other federal agencies or officials, improperly influenced the underlying removal proceedings and

orders by the IJ, in violation of Petitioner's constitutional right to due process and the IJ's duty of impartiality, and (2) the BIA targeted Petitioner and treated his case abnormally. *See* <u>ROA.19-23</u>; <u>ROA.687-733</u>.

Further fact-finding is required to determine—given the documented fact of multiple BIA members recusing themselves from the case, as well as notes from within EOIR's database—whether the IJ issued the underlying removal order and denial of various motions and applications in a neutral, impartial, and non-predetermined manner. *See* <u>ROA.687-89</u> (former BIA member noting recusal of three BIA members in one case is "extremely strange" and "raised serious questions [] about whether multiple AIJs had less formal contact or involvement with this high-profile case at an earlier stage such that they were aware they had a conflict of interest, or the strong appearance of one, voting on the appeal. If that occurred, it would cast doubt on whether the immigration judge's trial-level decision was made independently and impartially."); <u>ROA.720</u> ("three recusals from a single Board case strongly suggests significant prior involvement of those members with the case before it reached the Board.").

The evidence further demonstrates that the BIA targeted Petitioner's case and treated it abnormally, including by hand-picking Chief AIJ Malphrus to adjudicate his case, treating it far differently from any other similarly situated cases, and deciding it on an abnormally expedited timeline after improperly directing that it be

27

expedited before Petitioner's case even reached the BIA:

> Internal board documents obtained by The New York Times show that the case was considered high priority even before the board officially received it. A note from an internal case-tracking file from June [three months before the IJ's September removal order and four months before Mr. Khalil filed an appeal] said that, even though Mr. Khalil had been released several days earlier, the case was to be handled as if he were still in detention, which would speed it along.

ROA.19-23.

Although internal BIA documents were obtained by the *Times*, the documents themselves were not made public. Petitioner is entitled to seek the documents that public records already confirm exist, along with any additional documentation of the agency's misconduct, in discovery. This discovery is critical to his claim under *Accardi* that the agency prejudged his case, likely engaged in *ex parte* communications with the IJ presiding over his proceedings, directed a predetermined removal order, and violated its own statutorily and constitutionally required regulations in doing so. Petitioner has no alternative forum in which to meaningfully conduct discovery into the agency's misconduct. *See, e.g.*, *Wang v. Reno*, 81 F.3d 808, 815 n.10 (9th Cir. 1996) ("Discovery was critical to Wang's efforts to expose the government's misconduct. Had the government prevailed on its jurisdictional claim below, a grave injustice would have occurred because INA procedure and the government's litigation strategy would have prevented Wang from uncovering the government's serious misconduct.").

In addition to the government's violation of rules governing the neutrality of adjudication, Petitioner also argues that the agency violated its own policy providing that "[a] noncitizen's exercise of their First Amendment rights ... should never be a factor in deciding to take enforcement action," *see* 2021 Mayorkas Memo at 5, such that Petitioner's removal order must be invalidated. First, Petitioner is entitled to discovery as to whether the charges were levied against him pursuant to an unlawful policy of retaliation that relied on Petitioner's exercise of his First Amendment rights in violation of the agency's own guidance. Second, Petitioner is entitled to discovery into the bases for each challenged enforcement action to determine whether Petitioner's protected First Amendment activity—including his speech in support of Palestinian human rights, critical of Israel and U.S. support for Israel, or his filing of a federal action—was a factor in DHS's decisions to issue the charges sustained by the IJ and BIA. The fact that DHS relied on Petitioner's exercise of his First Amendment rights in deciding to issue the FPG is clear from statutory language of the provision itself and the Rubio Determination on which the charge relies. ROA.9764 (Rubio Determination) (noting Petitioner's beliefs, statements, and associations are "otherwise lawful"). Thus, Petitioner is entitled to discovery into whether the government's sudden decision to issue the post-hoc charge—only days after concluding the FPG was the only removal ground applicable to Petitioner, following Petitioner's federal lawsuit challenging his detention and removal based

on the FPG, and amid nationwide public scrutiny and documented internal concerns within government agencies regarding the legal vulnerability of the Rubio Determination and the FPG—was in fact independent of Petitioner's exercise of his First Amendment rights or, instead, was likewise motivated by Petitioner's First Amendment-protected activity, in violation of the agency's own guidance.

Moreover, this fact-finding must occur before the Court assesses the merits of Petitioner's PFR because it may conclusively demonstrate that the underlying removal order was unlawfully issued, requiring vacatur of the order. *See, e.g.,* *Arzanipour*, 866 F.2d at 746 (failure of an agency to follow its own regulations is a per se denial of due process where, as here, the regulation is required by the constitution or a statute).

## II. Without a §2347(b)(3) transfer, Petitioner will be denied any opportunity to develop the record to challenge his unconstitutional removal.

There is no question that *some* forum must be available for Petitioner to develop his constitutional claims. Nor is there any dispute that, to date, he has been denied any meaningful opportunity to do so. *See St. Cyr*, 533 U.S. at 304 ("It necessarily follows that a serious Suspension Clause issue would be presented if we were to accept the INS's submission that the 1996 statutes have withdrawn that power from federal judges and provided no adequate substitute for its exercise."); *AADC*, 525 U.S. at 495 (Ginsburg, J. concurring) (citing *Webster v. Doe*, 486 U.S.

592, 603 (1988) (a "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim")).

For these reasons, the Third Circuit stated Petitioner "should be able to invoke §2347(b)(3)" during his PFR proceedings so that this Court "can meaningfully review [his] claims." *Khalil*, 164 F.4th at 280.

The §2347(b)(3) procedure is compelled by the Supreme Court's admonition that petitioners are entitled to "careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts," and that even where Congress has been silent on "methods for securing facts," federal courts have an "inescapable obligation" on certain occasions to order discovery. *Harris v. Nelson*, 394 U.S. 286, 299 (1969). Here, the Court has such an inescapable obligation because, without transfer to a District Court, Petitioner will be denied *any* forum to meaningfully adjudicate his colorable constitutional claims that the agency violated his First and Fifth Amendment rights.

A §2347(b)(3) transfer is the appropriate mechanism for a PFR court to elicit necessary factual development of the record. In addition to the government's concessions, the availability of a §2347(b)(3) transfer is confirmed by the plain text of the statute, statutory context, and case law. *See Khalil*, 164 F.4th at 280 ("Statutory context confirms that this part of the Hobbs Act applies to the INA. When Congress enacted § 1252 in its present form [in 1996], it expressly barred courts

from using a companion provision of the Hobbs Act, §2347(c), to supplement the record in immigration cases. 8 U.S.C. § 1252(a)(1). By barring recourse to subsection (c) alone, Congress strongly implied that PFR courts may still use subsection (b)."). Courts considering the availability of such a transfer following amendments to the INA in 1996 have similarly so concluded. *See id.*; *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001) (transferring immigration PFR to district court for further fact-finding); *Morgan v. Gonzales*, 495 F.3d 1084, 1090 (9th Cir. 2007) (confirming §2347(b)(3) mechanism is available in the immigration context); *see also Gomez-Chavez v. Perryman*, 308 F.3d 796, 802 (7th Cir. 2003) (noting government position that "a case with disputed facts may be transferred to the district court pursuant to 28 U.S.C. § 2347(b)(3) for a hearing.").[9]

---

[9] Dicta in *Coriolan v. INS*, 559 F.2d 993 (5th Cir. 1977), concluding §2347(b)(3) is unavailable—when employing §2347(c) to incorporate additional evidence—is neither binding nor relevant here because it precedes the 1996 amendments to the INA that eliminated §2347(c), implicitly left §2347(b)(3) available to PFR courts, and wholly undercut the reasoning of that dicta in *Coriolan*. Indeed, multiple circuit courts have since cited *Coriolan* for the proposition that the §2347 procedures are applicable to the immigration context when concluding that §2347(b)(3) transfer *is* in fact available. *See, e.g.*, *Musau v. Carlson*, 499 F. App'x 837, 849 (10th Cir. 2012) (O'Brien, J., dissenting) (citing *Coriolan* for proposition that "Petitioners presenting colorable claims for relief have a right to an evidentiary hearing, and the transfer procedure gives effect to that right in cases where the claim could not be asserted before the agency"); *Richardson v. Reno*, 162 F.3d 1338, 1374 (11th Cir. 1998), *cert. granted, judgment vacated*, 526 U.S. 1142 (1999) (citing *Coriolan* and finding "in the absence of a factual record of an alleged constitutional violation due to an immigration judge's inability to rule on such matters, the court of appeals can upon proffer transfer the case to the district court").

This Court should therefore grant §2347(b)(3) transfer here.

## CONCLUSION

For the foregoing reasons, this Court should grant Petitioner's Hobbs Act Motion and transfer proceedings to the U.S. District Court for the Eastern District of New York, where Petitioner resides.

Dated: July 16, 2026          */s/ Johnny Sinodis*

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Mr. Khalil*

# CERTIFICATE OF CONFERENCE

I certify that counsel for Petitioner contacted counsel for Respondent on June 24, 2026, regarding this motion, who advised via email on July 2, 2026, that Respondent is opposed and intends to file an opposition.

*/s/ Johnny Sinodis*
Johnny Sinodis

# CERTIFICATE OF SERVICE

I certify that on July 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in this case, including Petitioner's counsel, are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Johnny Sinodis*
Johnny Sinodis

# CERTIFICATE OF ELECTRONIC FILING

I, Johnny Sinodis, hereby certify that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Johnny Sinodis*
Johnny Sinodis

# CERTIFICATE OF COMPLIANCE WITH RULES 27(d) AND 32(a)

I, Johnny Sinodis, hereby certify that:

- This motion contains 7,498 words, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(f)</u>. **Petitioner is concurrently filing an <u>unopposed</u> motion for leave from the Court to file an extra-length motion.**

- This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because:

  - This motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Johnny Sinodis*
Johnny Sinodis
